UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSHUA C. RUSHING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No: |
| v. | ) |
| | ) Judge |
| EQUIFAX INFORMATION SERVICES LLC, | ) |
| EXPERIAN INFORMATION SOLUTIONS, INC., | ) |
| TRANS UNION LLC, and PENNSYLVANIA | ) |
| HIGHER EDUCATION ASSISTANCE AGENCY | ) |
| d/b/a FEDLOAN SERVICING, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff, JOSHUA C. RUSHING ("Plaintiff") brings this action on behalf of himself against defendants EQUIFAX INFORMATION SERVICES LLC ("Equifax"), EXPERIAN INFORMATION SOLUTIONS, INC. ("Experian"), TRANS UNION LLC ("Trans Union"), and PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY d/b/a FEDLOAN SERVICING ("FedLoan Servicing") (collectively, "Defendants") as follows:

## PRELIMINARY STATEMENT

1. Plaintiff brings this action against Defendants for damages resulting from their violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 ("FCRA").

2. Identity theft is "a fraud committed using the identifying information of another person..." 15 U.S.C. § 1681a(q)(3). Identity theft is a regular and predictable occurrence that leads to inaccurate credit reports.

3. "Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the

1

continued functioning of the banking system." 15 U.S.C. § 1681 (a)(1). "Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers." 15 U.S.C. § 1681 (a)(3). "There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right of privacy." 15 U.S.C. § 1681 (a)(4).

4. Consumer reporting agencies are to "[]adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information …" 15 U.S.C. § 1681 (b).

5. When Plaintiff was a resident of Chicago, he was a victim of identity theft. Someone pretended to be him in order to receive unsubsidized Stafford school loans to allegedly take classes at the Art Institute of Pittsburgh—an institution that is now closed.

6. Plaintiff learned of the significant impact an identity theft victim suffers in January or February 2019, when he applied for a mortgage and in that process learned that he had several fraudulent accounts on his credit report. Plaintiff disputed those fraudulent accounts to Defendants. Ultimately, the Defendants agreed to remove all the fraudulent and derogatory accounts with one exception. Defendants verified, as accurate, a fraudulent school loan.

7. Plaintiff then submitted a sworn Declaration to Defendants, under penalty of perjury, testifying that the school loan was not his, that he was a victim of identity theft, and that he would work with law enforcement to determine who stole his identity. Defendants ignored Plaintiff's declaration and continued to verify the fraudulent school loan as his. As a result, to date, Plaintiff's credit reports are showing a derogatory school loan account that is not his. Additionally, Plaintiff's pay checks are being garnished as a result of the identify theft and

Defendants' actions. Plaintiff is in the process of objecting to the garnishment, but as of this filing, the objection has not been granted. Plaintiff also had tax return money taken from him as a result of this identity theft. Furthermore, Plaintiff and his disabled wife are unable to purchase a home due to the false and fraudulent information contained in his credit reports.

## JURISDICTION

8. Jurisdiction is proper under 28 U.S.C. § 1346(b)(1), 28 U.S.C. § 1331, and 15 U.S.C. § 1681p (FCRA) as this action arises under the laws of the United States.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) as Plaintiff resides in this district and a substantial part of the acts and omissions giving rise to the claims occurred within Illinois and this judicial district.

## PARTIES

10. Plaintiff Joshua C. Rushing is a natural person who resides in Cook County, Illinois.

11. Defendant Equifax is a corporation with its principal place of business located at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309. Its registered agent is Illinois Corporation Service C, 801 Adlai Stevenson Drive, Springfield, IL 62703.

12. Equifax is a credit reporting agency that compiles and maintains files on consumers on a nationwide basis for the purpose of furnishing consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity.

13. Defendant Experian is an Ohio corporation with its principal place of business located at 505 City Parkway West, Orange, California 92868. Its registered agent is C T Corporation System, 208 S. LaSalle Street, Suite 814, Chicago, IL 60604.

14. Experian is a credit reporting agency that compiles and maintains files on consumers on a nationwide basis for the purpose of furnishing consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity.

15. Defendant Trans Union is an Illinois limited liability corporation with its principal place of business located at 555 West Adams Street, Chicago, IL 60661. Its registered agent is Prentice Hall Corporation, 801 Adlai Stevenson Drive, Springfield, IL 62703.

16. Trans Union is a credit reporting agency that compiles and maintains files on consumers on a nationwide basis for the purpose of furnishing consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity.

17. Defendant FedLoan Servicing is an organization that services loans owned by the Federal government and has its principal place of business located at 1200 North 7th Street, Harrisburg, PA 17102.

18. FedLoan Servicing is a "furnisher of information" as that term is defined by the FCRA, 15 U.S.C. § 1681s-2.

19. Equifax, Experian, Trans Union, and FedLoan Servicing regularly conduct business in Illinois.

## FACTS

20. In early 2019, Plaintiff attempted to qualify for a mortgage to purchase a home. In doing so, Plaintiff worked with a mortgage company to pull his credit reports from Equifax, Experian, and Trans Union.

21. Plaintiff's credit reports showed multiple fraudulent accounts, including reference to fraudulent school loan tradelines, even though Plaintiff had never obtained such student loans.

22. In the past Plaintiff had received phone calls and notices of a false school loan but had repeatedly told those people that the account was wrong and that he never applied for a school loan; including sending bills back to the sender with notes that the bills were not his. Plaintiff did not know that the fraudulent activity was negatively impacting his credit reports until he attempted to qualify for a mortgage.

23. In the process of investigating the fraudulent school loans, Plaintiff contacted Pioneer Credit Recover, Inc., ("Pioneer") a third-party debt collector which was trying to collect on the fraudulent school loans. Plaintiff disputed the validity of the fraudulent school loan debt to Pioneer.

    A.    **Fraudulent school loan application.**

24. On March 7, 2019, in response to Plaintiff's dispute of the fraudulent school loan debt, Pioneer produced an 8-page "William D. Ford Federal Direct Loan Program" application. (the "fraudulent school loan application") Exhibit A, Declaration of Joshua C. Rushing.

25. Prior to receiving the fraudulent school loan application from Pioneer in March 2019, Plaintiff had never seen the fraudulent application before. Id. at ¶ 11.

26. Plaintiff did not fill out the fraudulent school loan application. Id. at ¶ 12.

27. Plaintiff did not authorize anyone to use his name or personal information to obtain any benefit from the fraudulent school loan. Id. at ¶ 5.

28. Plaintiff did not receive any money, goods, services, or other benefits as a result of the fraudulent school loan. Id. at ¶ 6.

29. When the fraudulent school loan application was filled out—April 2012—Plaintiff was married and living in Chicago. Id. at ¶¶ 2, 13.

30. Plaintiff's wife did not fill out the fraudulent school loan application. Id. at ¶ 13.

31. The email address listed on the fraudulent school loan application has never belonged to Plaintiff. Id. at ¶ 15.

32. The names Rebecca Tyler and Jacqueline Moore are listed on the fraudulent school loan application. Plaintiff knows those people but does not speak with them and has no idea why their names are listed on the fraudulent school loan application. Id. ¶ 16.

33. Plaintiff never applied to attend school at the Art Institute of Pittsburgh. Id. at ¶ 18.

34. Plaintiff has never lived in Pittsburgh. Id. at ¶ 19.

35. Plaintiff's signature is nowhere on the fraudulent loan application. Id. at ¶ 33.

36. Plaintiff did not authorize anyone to electronically sign his name to the fraudulent school loan application. Id. at ¶ 23.

37. In late February or early March 2019, Plaintiff received a "Notice of Proposed Wage Garnishment," Id. at Ex. B.

38. The Notice of Wage Garnishment states that on May 16, 2012, a $4,485.00 payment was made to the Art Institute of Pittsburgh because of the fraudulent loan application. Plaintiff knew nothing about such a payment and never received any such payment. Id. at ¶ 25.

39. The Notice of Wage Garnishment states that on May 16, 2012, a $3,500.00 payment was made to the Art Institute of Pittsburgh because of the fraudulent loan application. Plaintiff knew nothing about such a payment and never received any such payment. Id. at ¶ 26.

**B.** **Multiple fraudulent tradelines referenced in Plaintiff's credit reports.**

40. In April 2019, on Plaintiff's Equifax credit report there were 7 fraudulent accounts—3 Capital One accounts, 1 Comcast account, and 3 federal school loan accounts—that did not belong to Plaintiff. Exhibit B, May 1, 2019 dispute letter to Equifax.

6

41. In April 2019, on Plaintiff's Experian credit report there were 3 fraudulent accounts—1 Capital One account, 1 Comcast account, and 1 federal school loan account—that did not belong to Plaintiff. Exhibit C, May 1, 2019 dispute letter to Experian.

42. In April 2019, on Plaintiff's Trans Union credit report there were 4 fraudulent accounts—1 Capital One account and 3 federal school loan accounts—that did not belong to Plaintiff. Exhibit D, May 1, 2019 dispute letter to Trans Union.

43. Plaintiff disputed these fraudulent accounts several times through the Credit Karma dispute process, thereby informing Equifax and Trans Union that the above-mentioned accounts were not his and were therefore fraudulent.

44. Neither Equifax nor Trans Union (because Experian does not work with Credit Karma, Experian was not notified about the dispute) removed any of the fraudulent accounts through Plaintiff's Credit Karma dispute process.

45. On May 1, 2019, Plaintiff sent dispute letters to Equifax, Experian, and Trans Union disputing the above-mentioned fraudulent accounts. Exhibits B-D. Plaintiff told each of the Defendants that the above-mentioned accounts were not his, that he had no knowledge of any those accounts, and requested that they be deleted from his credit reports. Id.

**C.    Equifax's inaccurate reporting.**

46. On May 29, 2019, Equifax responded to Plaintiff's May 1, 2019 dispute letter.

47. Equifax deleted the 3 fraudulent Capital One accounts from Plaintiff's Equifax credit report.

48. Equifax stated that the former fraudulent Comcast account was no longer reported on Plaintiff's Equifax credit report.

49. However, Equifax verified the 3 fraudulent school loan accounts as correctly reported.

50. With respect to the fraudulent account listed as "US Dept of Ed…", Account number ending in 8676, Equifax stated: "We verified that this item belongs to you. This account has been updated. Additional information has been provided from the original source regarding this item."

51. With respect to the fraudulent account listed as "Fed Loan Servicing", Account number ending in 494FD0 with a high credit of $4,485, Equifax stated: "We verified that this item belongs to you. This account has been updated. Additional information has been provided from the original source regarding this item."

52. With respect to the fraudulent account listed as "Fed Loan Servicing", Account number ending in 494FD0 with a high credit of $3,500, Equifax stated: "We verified that this item belongs to you. This account has been updated. Additional information has been provided from the additional questions about this item."

53. In response to Equifax's inadequate investigation, Plaintiff prepared the above-mentioned "Declaration of Joshua C. Rushing" that he signed under penalty of perjury explaining that the above fraudulent school loan tradelines were a result of identity theft. Exhibit A.

54. On June 25, 2019, Plaintiff sent another dispute letter to Equifax regarding the 3 fraudulent school loan tradelines. Exhibit E. Plaintiff included Exhibit A, and supporting documentation explaining that he was a victim of identity theft and requested that Equifax delete the 3 fraudulent school loan tradelines from his credit report. Id.

55. On July 20, 2019, Equifax responded to Plaintiff's dispute by verifying the 3 fraudulent school loan accounts as accurate. As they had done in May 2019, Equifax verified that all 3 of the fraudulent school loans belonged to Plaintiff.

**D.    Experian's inaccurate reporting.**

56. On May 25, 2019, Experian responded to Plaintiff's May 1, 2019 dispute letter.

57. Experian deleted the 1 fraudulent Capital One account from Plaintiff's Experian credit report. The Comcast item no longer appeared on his Experian credit report.

58. However, the fraudulent school loan account was verified as correct by Experian.

59. With respect to the fraudulent account listed as "US Dept of Ed…", Account number ending in 8676, Experian stated: "The information you disputed has been verified as accurate…"

60. In response to Experian's inadequate investigation, Plaintiff prepared the above-mentioned "Declaration of Joshua C. Rushing" that he signed under penalty of perjury explaining that the above fraudulent school loan tradelines were a result of identity theft. Exhibit A.

61. On June 25, 2019, Plaintiff sent another dispute letter to Experian regarding the fraudulent school loan tradeline. Exhibit F. Plaintiff included Exhibit A, and supporting documentation explaining that he was a victim of identity theft and requested that Experian delete the fraudulent school loan tradeline from his credit report. Id.

62. On July 17, 2019, Experian responded to Plaintiff's dispute by verifying the fraudulent school loan account as accurate. Experian stated, "The information you disputed has been verified as accurate…"

9

### E. Trans Union's inaccurate reporting.

63. On May 29, 2019, Trans Union responded to Plaintiff's May 1, 2019 dispute letter.

64. Trans Union deleted the 1 fraudulent Capital One account from Plaintiff's Trans Union credit report.

65. However, Trans Union verified the 3 fraudulent school loan accounts as correct.

66. With respect to the fraudulent account listed as "FedLoan Servicing", Account number ending in 494FD0 with a high balance of $3,500, Trans Union stated: "Verified as Accurate."

67. With respect to the fraudulent account listed as "FedLoan Servicing", Account number ending in 494FD0 with a high balance of $4,485, Trans Union stated: "Verified as Accurate."

68. With respect to the fraudulent account listed as "Us Dept of Education/GLE", Account number ending in 8676, Trans Union stated: "Verified as Accurate."

69. In response to Trans Union's inadequate investigation, Plaintiff prepared the above-mentioned "Declaration of Joshua C. Rushing" that he signed under penalty of perjury explaining that the above fraudulent school loan tradelines were a result of identity theft. Exhibit A.

70. On June 25, 2019, Plaintiff sent another dispute letter to Trans Union regarding the 3 fraudulent school loan tradelines. Exhibit G. Plaintiff included Exhibit A, and supporting documentation explaining that he was a victim of identity theft and requested that Equifax delete the 3 fraudulent school loan tradelines from his credit report. Id.

71. On July 23, 2019, Trans Union responded to Plaintiff's dispute by verifying the 3 fraudulent school loan accounts as accurate. As they had done in May 2019, Trans Union verified that all 3 of the fraudulent school loans belonged to Plaintiff.

72. Additionally, Trans Union included "dispute results" for tradelines that Plaintiff never disputed. Trans Union verified a Capital One Bank card ending in 0379 that Plaintiff never disputed as accurate. As a result, Plaintiff's Trans Union credit report reflects a dispute that is not accurate.

73. Trans Union verified a second Capital One Bank card ending in 5449 that Plaintiff never disputed as accurate. As a result, Plaintiff's Trans union credit report reflects a dispute that is not accurate.

**F. Damages.**

74. Plaintiff has suffered damages proximately caused by the conduct of Equifax, Experian, Trans Union, and FedLoan Servicing, including:

   i. Emotional distress, humiliation, guilt, stress, anxiety, sleepless nights, and loss of focus and production at work;

   ii. Time and expense of pulling/reviewing credit reports to verify the reporting of the fraudulent school loan reporting;

   iii. Believing that the fraudulent school loan reporting may continue to be reported inaccurately through no fault of Plaintiff's and have a chilling effect on his ability to obtain credit for years to come;

   iv. Adverse information on his credit reports and a negative impact to his credit rating;

   v. An inability to improve his credit score during the dispute process;

   vi. A lower credit score; and

   vii. Having to hire attorneys to combat the improper credit reporting.

75. Additionally, as a result of the furnishing and reporting of false information regarding the fraudulent school loan tradelines on Plaintiff's Equifax, Experian, and Trans Union

credit reports — and Defendants' failure to correct the reports after they had been disputed by Plaintiff — Plaintiff has been damaged in that his credit rating is not as high as it would be in the absence of such inaccurate and misleading reporting, and as a result he is not eligible for credit on the terms which he would be in the absence of such maximally accurate reporting.

76. In addition, Plaintiff's wife is disabled with multiple severe disabilities. These disabilities are exacerbated by the current living conditions of Plaintiff and his wife, which include an abusive landlord and an apartment in disrepair due to the landlord's refusal to make it appropriately habitable. Plaintiff's attempt to obtain a mortgage as detailed herein was made in an effort to address his wife's disability and their current living conditions. Upon information and belief, but for the fraudulent school loans reporting on Plaintiff's credit report Plaintiff and his wife would qualify for a mortgage to purchase a home. The inability to move from their apartment has caused tremendous emotional distress to Plaintiff, who believes his wife's disabilities are greatly exacerbated due to their inability to move out of their current apartment and into a home.

## COUNT I

### Equifax - FCRA—Failure to assure accuracy

77. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

78. Pursuant to 15 U.S.C. § 1681e(b) whenever Equifax prepares a consumer report it "shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

79. Equifax failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit report and credit files maintained and

published concerning Plaintiff's fraudulent school loan tradelines, in violation of 15 U.S.C. § 1681e(b).

80. Equifax's conduct, action, and inaction as alleged herein was willful, or, in the alternative, negligent.

81. Plaintiff has suffered embarrassment, humiliation, and emotional distress as a result of Equifax's conduct, action, and inaction.

WHEREFORE, Plaintiff requests that this Honorable Court:

    a. Enter judgment in his favor and against Equifax;
    b. Appropriate statutory penalties for each violation of the FCRA;
    c. Actual damages;
    d. Punitive damages;
    e. Reasonable attorney's fees and the costs of this litigation;
    f. Pre-judgment and post-judgment interest at the legal rate;
    g. Appropriate equitable relief, including the correction or deletion of the inaccurate or misleading reporting of Plaintiff's fraudulent school loan tradelines; and
    h. Such other relief as the Court deems equitable, just, and proper.

## COUNT II

**Equifax - FCRA—Failure to reasonably reinvestigate**

82. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

83. Pursuant to 15 U.S.C. § 1681i(a)(1)(A) if a consumer disputes any item of information contained in his Equifax credit report, Equifax must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file…"

84. Pursuant to 15 U.S.C. § 1681i(a)(4) Equifax must "review and consider all relevant information submitted by the consumer" when Equifax conducts any reinvestigation.

85. Equifax failed to conduct a reasonable investigation of the information in Plaintiff's credit file with regard to the fraudulent school loan tradelines after receiving actual notice of the inaccuracies, along with the detailed information provided by Plaintiff.

86. Equifax failed to delete inaccurate information after actual notice of inaccuracies.

87. Equifax failed to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file with regard to Plaintiff's fraudulent school loan tradelines.

88. Equifax's conduct, action, and inaction as alleged herein was willful, or, in the alternative, negligent.

89. Plaintiff suffered embarrassment, humiliation, and emotional distress as a result of Equifax's conduct, action, and inaction.

WHEREFORE, Plaintiff requests that this Honorable Court:

    a.    Enter judgment in his favor and against Equifax;
    b.    Appropriate statutory penalties for each violation of the FCRA;
    c.    Actual damages;
    d.    Punitive damages;
    e.    Reasonable attorney's fees and the costs of this litigation;
    f.    Pre-judgment and post-judgment interest at the legal rate;
    g.    Appropriate equitable relief, including the correction or deletion of the inaccurate or misleading reporting of Plaintiff's fraudulent school loan tradelines; and
    h.    Such other relief as the Court deems equitable, just, and proper.

## COUNT III

**Experian - FCRA—Failure to assure accuracy**

90. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

91. Pursuant to 15 U.S.C. § 1681e(b) whenever Experian prepares a consumer report it "shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

92. Experian failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit report and credit files maintained and published concerning Plaintiff's fraudulent school loan tradelines, in violation of 15 U.S.C. § 1681e(b).

93. Experian's conduct, action, and inaction as alleged herein was willful, or, in the alternative, negligent.

94. Plaintiff has suffered embarrassment, humiliation, and emotional distress as a result of Experian's conduct, action, and inaction.

WHEREFORE, Plaintiff requests that this Honorable Court:

a. Enter judgment in his favor and against Experian;
b. Appropriate statutory penalties for each violation of the FCRA;
c. Actual damages;
d. Punitive damages;
e. Reasonable attorney's fees and the costs of this litigation;
f. Pre-judgment and post-judgment interest at the legal rate;
g. Appropriate equitable relief, including the correction or deletion of the inaccurate or misleading reporting of Plaintiff's fraudulent school loan tradelines; and
h. Such other relief as the Court deems equitable, just, and proper.

## COUNT IV

**Experian - FCRA—Failure to reasonably reinvestigate**

95. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

96. Pursuant to 15 U.S.C. § 1681i(a)(1)(A) if a consumer disputes any item of information contained in his Experian credit report, Experian must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file…"

97. Pursuant to 15 U.S.C. § 1681i(a)(4) Experian must "review and consider all relevant information submitted by the consumer" when Experian conducts any reinvestigation.

98. Experian failed to conduct a reasonable investigation of the information in Plaintiff's credit file with regard to the fraudulent school loan tradelines after receiving actual notice of the inaccuracies, along with the detailed information provided by Plaintiff.

99. Experian failed to delete inaccurate information after actual notice of inaccuracies.

100. Experian failed to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file with regard to Plaintiff's fraudulent school loan tradelines.

101. Experian's conduct, action, and inaction as alleged herein was willful, or, in the alternative, negligent.

102. Plaintiff suffered embarrassment, humiliation, and emotional distress as a result of Experian's conduct, action, and inaction.

WHEREFORE, Plaintiff requests that this Honorable Court:

a. Enter judgment in his favor and against Experian;
b. Appropriate statutory penalties for each violation of the FCRA;
c. Actual damages;
d. Punitive damages;
e. Reasonable attorney's fees and the costs of this litigation;
f. Pre-judgment and post-judgment interest at the legal rate;
g. Appropriate equitable relief, including the correction or deletion of the inaccurate or misleading reporting of Plaintiff's fraudulent school loan tradelines; and
h. Such other relief as the Court deems equitable, just, and proper.

## COUNT V

### Trans Union - FCRA—Failure to assure accuracy

103. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

104. Pursuant to 15 U.S.C. § 1681e(b) whenever Trans Union prepares a consumer report it "shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

16

105. Trans Union failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit report and credit files maintained and published concerning Plaintiff's fraudulent school loan tradelines, in violation of 15 U.S.C. § 1681e(b).

106. Trans Union's conduct, action, and inaction as alleged herein was willful, or, in the alternative, negligent.

107. Plaintiff has suffered embarrassment, humiliation, and emotional distress as a result of Trans Union's conduct, action, and inaction.

WHEREFORE, Plaintiff requests that this Honorable Court:

a. Enter judgment in his favor and against Trans Union;
b. Appropriate statutory penalties for each violation of the FCRA;
c. Actual damages;
d. Punitive damages;
e. Reasonable attorney's fees and the costs of this litigation;
f. Pre-judgment and post-judgment interest at the legal rate;
g. Appropriate equitable relief, including the correction or deletion of the inaccurate or misleading reporting of Plaintiff's fraudulent school loan tradelines; and
h. Such other relief as the Court deems equitable, just, and proper.

## COUNT VI

**Trans Union - FCRA—Failure to reasonably reinvestigate**

108. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

109. Pursuant to 15 U.S.C. § 1681i(a)(1)(A) if a consumer disputes any item of information contained in his Experian credit report, Trans Union must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file…"

110. Pursuant to 15 U.S.C. § 1681i(a)(4) Trans Union must "review and consider all relevant information submitted by the consumer" when Trans Union conducts any reinvestigation.

111. Trans Union failed to conduct a reasonable investigation of the information in Plaintiff's credit file with regard to the fraudulent school loan tradelines after receiving actual notice of the inaccuracies, along with the detailed information provided by Plaintiff.

112. Trans Union failed to delete inaccurate information after actual notice of inaccuracies.

113. Trans Union failed to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file with regard to Plaintiff's fraudulent school loan tradelines.

114. Trans Union's conduct, action, and inaction as alleged herein was willful, or, in the alternative, negligent.

115. Plaintiff has suffered embarrassment, humiliation, and emotional distress as a result of Trans Union's conduct, action, and inaction.

WHEREFORE, Plaintiff requests that this Honorable Court:

a. Enter judgment in his favor and against Trans Union;
b. Appropriate statutory penalties for each violation of the FCRA;
c. Actual damages;
d. Punitive damages;
e. Reasonable attorney's fees and the costs of this litigation;
f. Pre-judgment and post-judgment interest at the legal rate;
g. Appropriate equitable relief, including the correction or deletion of the inaccurate or misleading reporting of Plaintiff's fraudulent school loan tradelines; and
h. Such other relief as the Court deems equitable, just, and proper.

## COUNT VII

### FedLoan Servicing - FCRA—Failure to investigate

116. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

117. Pursuant to 15 U.S.C. § 1681s-2(b)(1)(A), after FedLoan Servicing receives notice of a "dispute with regard to the completeness or accuracy of any information provided by

a person to a consumer reporting agency, [FedLoan Servicing] shall conduct an investigation with respect to the disputed information."

118. Pursuant to 15 U.S.C. § 1681s-2(b)(1)(A), after FedLoan Servicing receives notice of a "dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, [FedLoan Servicing] shall review all relevant information provided by the consumer reporting agency…"

119. FedLoan Servicing failed to fully and properly investigate Plaintiff's disputes with regard to Plaintiff's fraudulent school loan tradelines.

120. FedLoan Servicing failed to review all relevant information provided by Equifax, and Trans Union (FedLoan is not reporting the fraudulent school loans on Plaintiff's Experian credit report) relating to Plaintiff's dispute as to his fraudulent school loan tradelines.

121. FedLoan's conduct, action, and inaction as alleged herein was willful, or, in the alternative, negligent.

122. Plaintiff has suffered embarrassment, humiliation, and emotional distress as a result of FedLoan Servicing's failure to fully and properly investigate Plaintiff's disputes.

WHEREFORE, Plaintiff requests that this Honorable Court:

a. Enter judgment in his favor and against FedLoan Servicing;
b. Appropriate statutory penalties for each violation of the FCRA;
c. Actual damages;
d. Punitive damages;
e. Reasonable attorney's fees and the costs of this litigation;
f. Pre-judgment and post-judgment interest at the legal rate;
g. Appropriate equitable relief, including the correction or deletion of the inaccurate or misleading reporting of Plaintiff's fraudulent school loan tradelines; and
h. Such other relief as the Court deems equitable, just, and proper.

**Plaintiff demands a trial by jury on all issues so triable pursuant to Fed. R. Civ. P. 38.**

Dated: August 24, 2019　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　JOSHUA C. RUSHING, plaintiff,

　　　　　　　　　　　　　　　　　By:　/s/James M. Smith

　　　　　　　　　　　　　　　　　　　Richard J. Doherty (6226707)
　　　　　　　　　　　　　　　　　　　James M. Smith (6285183)
　　　　　　　　　　　　　　　　　　　Doherty Smith, LLC
　　　　　　　　　　　　　　　　　　　105 W. Madison Street
　　　　　　　　　　　　　　　　　　　Suite 1500
　　　　　　　　　　　　　　　　　　　Chicago, IL 60602
　　　　　　　　　　　　　　　　　　　Phone: 866.825.6787
　　　　　　　　　　　　　　　　　　　Fax: 312.319.4084
　　　　　　　　　　　　　　　　　　　RDoherty@dohertysmith.com
　　　　　　　　　　　　　　　　　　　JSmith@dohertysmith.com