IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSHUA C. RUSHING, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> EXPERIAN INFORMATION SOLUTIONS, ) <br> INC., PENNSYLVANIA HIGHER ) <br> EDUCATION ASSISTANCE AGENCY ) <br> d/b/a FEDLOAN SERVICING, GREAT ) <br> LAKES EDUCATIONAL LOAN SERVICES, ) <br> INC., UNITED STATES DEPARTMENT OF ) <br> EDUCATION, and PHIL ROSENFELT, ) <br> Acting Secretary of Education,[1] ) <br> ) <br> Defendants. ) | Case No. 19 C 5702 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Joshua Rushing says that he was the victim of identity theft and forgery. He contends the perpetrator applied for and received two student loans in his name. When those loans defaulted, the U.S. Department of Education notified Rushing that it would garnish his wages. Rushing objected to the wage garnishment on the basis that someone stole his identity. The DOE overruled the objection because Rushing had not submitted a loan discharge application based on identity theft or forgery, and it later denied Rushing's request for reconsideration. Rushing then sued the DOE under the Administrative Procedure Act, challenging its decisions as arbitrary and capricious.

---

[1] Acting Secretary of Education Phil Rosenfelt is substituted for the former Secretary of Education pursuant to Federal Rule of Civil Procedure 25(d).

At some point after Rushing sued the DOE, it suggested that he file a a formal loan discharge application. Rushing did so, but the DOE denied the application. The DOE has now moved for summary judgment. The case is a procedural muddle, largely because of how the DOE targeted its motion for summary judgment. Before getting to that, however, the Court will discuss the background in greater detail.

## Background

The following facts are undisputed unless otherwise noted. The DOE's records show that in April 2012, a promissory note for two student loans was signed and submitted in Joshua Rushing's name for attendance at the Art Institute of Pittsburgh. These loans were disbursed in May 2012. Rushing contends that he received phone calls and notices about student loans under his name in 2012 and 2013. In his response to these inquiries, he stated that he had never taken out student loans and the information was incorrect. DOE records reveal that someone made small payments on these loans with a credit card between September 2014 and May 2015—each for ten dollars. The DOE presumes Rushing made these payments, but Rushing contends that he did not make them, as he did not own a credit card until 2019. In early 2015, the loans went into default. On February 16, 2015, the DOE received a repayment agreement bearing what purported to be Rushing's "wet" signature[2] for the department's loan rehabilitation program.

Rushing asserts that he was not aware that the loans had negatively impacted his credit until 2019. In early 2019, Rushing applied for a mortgage loan. During that

---

[2] A "wet" signature describes a physical signature affixed to a hard copy of a document with a pen or other writing instrument.

process, he became aware of several fraudulent accounts on his credit report—including the two student loans that were taken out his name in 2012. In February or March 2019, Rushing also received a notice that the DOE was planning on garnishing his wages because of the unpaid loans.

### A.     Rushing's objection to wage garnishment

In June 2019, Rushing sent the DOE a request for hearing in which he objected to the wage garnishment, contending that he never applied for the loan or received loan proceeds. He theorized that someone had used his personal data to execute documents to obtain the loans and signed his name.

In August 2019, shortly after contacting the DOE, Rushing filed this lawsuit against various consumer reporting agencies—including Equifax, Experian, Trans Union, and FedLoan Servicing—under the Fair Credit Reporting Act, 15 U.S.C. § 1681. Rushing did not initially name the DOE as a defendant.

In September 2019, the hearing officer at the DOE concluded that Rushing did not meet his burden of proving his objection—in part because he did not submit a loan discharge application based on identity theft or forgery to support his contentions. Accordingly, the hearing officer found that the debt was enforceable.

In October 2019, Rushing requested reconsideration of the DOE's initial garnishment hearing decision, again contending that the loan application was fraudulent because it had been filed by someone who stole his identity. Rushing submitted with his request a one-page police report, which contained little information. He still did not file a loan discharge application based on identity theft or forgery to support his request for reconsideration. In December 2019, the DOE denied Rushing's request for

reconsideration and upheld the hearing officer's decision.

In January 2020, Rushing filed a second amended complaint in this case, seeking judicial review of the DOE's decision under the APA. On the face of Rushing's complaint, it appears that Rushing challenges both of the DOE's garnishment hearing decisions. *See* 2d Am. Compl. ¶ 146 ("The Department's *decisions* to deny Plaintiff's request for discharge were arbitrary . . . .").

**B.      Rushing's submission of a formal loan discharge application**

At some point after he filed the second amended complaint, Rushing submitted to the DOE a student loan discharge application based on identity theft and forgery. The parties dispute whether Rushing signed the loan discharge application. The DOE contends that Rushing did not sign or date his application; Rushing asserts that he signed and submitted it on March 15, 2020. *See* Pl.'s Ex. A, Loan Discharge Application: Forgery (dkt. no. 107). Although Rushing contends that the application was dated and signed, the document he submitted to the Court is an undated and unsigned application. *See id.* The DOE says that it encouraged Rushing to submit this application to satisfy his obligation to exhaust his administrative remedies.

The loan discharge application directions call for four signature samples from actual documents the applicant signed. Rushing submitted only three documents containing what he contended was his genuine signature. Rushing also included a copy of his social security card with the application, but he stated in his application that the signature on the card was inauthentic and contended that his aunt and legal guardian, Rebecca Tyler, signed the card before he moved out of her home. Rushing also indicated in his application that he suspected Tyler had applied for the loans and signed

the promissory note in his name (there was just one note covering both loans). Although the application form identified other types of documentation an applicant could submit in support—such as a court determination that he had been the victim of identity theft or a statement from a handwriting expert—Rushing did not submit any such documentation.

On April 28, 2020, the DOE issued a final agency decision based on Rushing's loan discharge application. Based on a preponderance of the evidence, the DOE upheld its prior decisions finding the loans enforceable and denied Rushing's request for discharge based on identity theft and forgery. As part of its decision, the DOE made several factual findings. It found that all of the personal information in the master promissory note, save for Rushing's e-mail address, was correct; "wet" signatures on two loan documents in the DOE's records matched the signature on Rushing's social security card and state identification card; the insufficiency of certain evidence (specifically, a police report concerning little information about the alleged identity theft) made the DOE question Rushing's credibility; Rushing did not take legal action until 2019, despite being on notice of loans taken out in his name as early as 2012 and 2013; the evidence suggested Rushing made nine voluntary student loan payments between September 2014 and May 2015; and finally, Internet data revealed that the promissory note was submitted in the same geographical area where Rushing resides.

Rushing did not further amend his complaint to include the DOE's April 2020 decision on the loan discharge application as a matter on which he sought review.

## Discussion

In count 5 of his second amended complaint, Rushing seeks declaratory and

5

injunctive relief against the DOE for agency determinations that he contends were arbitrary, capricious, an abuse of discretion, and not in accordance with the APA, 5 U.S.C. § 706. As just discussed, in his second amended complaint, Rushing seeks judicial review of two DOE decisions: the September 2019 denial of his objection to wage garnishment and the December 2019 denial of his request for reconsideration of the denial. *See* 2d Am. Compl. ¶ 146.

So far, so good. But when the DOE moved for summary judgment, it focused not on its 2019 decisions but rather on the April 2020 decision denying the loan discharge application, which—as noted earlier—is not even mentioned in Rushing's complaint. Its motion inaccurately characterized Rushing's complaint as follows: "Rushing challenges, under the Administrative Procedure Act, [the DOE's] final decision to deny his application to discharge the overdue student loans." Def.'s Mem. at 2. That was just plain wrong: Rushing did not mention that decision in his second amended complaint; he had not even filed the loan discharge application at that point.

The short, and correct, answer to the DOE's motion would have been that it was addressing a decision he had not challenged. But although Rushing pointed out the disconnect in his response to the DOE's motion for summary judgment, *see* Pl.'s Resp. at 2 (stating that "Plaintiff never amended his APA claim against the USDOE to include the additional record Plaintiff included in the March 15, 2020 Loan Discharge Application: Forgery"), he did not ask the Court to deny the motion on this basis. Rather, he decided to rely on the evidence he had submitted with the loan discharge application to argue that the DOE's decisions on his earlier objections to the garnishment were arbitrary and capricious—even though the DOE had none of that

6

evidence when it made those decisions.[3]

This doesn't work either. Review under the APA is limited to the record that was before the agency at the time of the challenged decision. *Mittelstadt v. Perdue*, 913 F.3d 626, 633 (7th Cir. 2019). But rather than pointing this out in reply, the DOE doubled down on the procedural muddle it had created with its motion: it said that the Court should read Rushing's complaint—which, again, was filed before the loan discharge application had even been suggested, let alone filed—to include a challenge to the post-complaint denial of that application: "Federal complaints are not frozen in time," the DOE said. Def.'s Reply at 3.

Perhaps so, but a plaintiff is the master of his complaint. *See, e.g., The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913) ("Of course, the party who brings a suit is master to decide what law he will rely upon.") (Holmes, J.). The DOE cites no authority for its facially absurd proposition that a defendant can force an amendment on a plaintiff to include a claim he has chosen not to make.

The bottom line is this: Rushing never amended his complaint to challenge the loan discharge application, and the DOE's motion for summary judgment does not address the two agency decisions that Rushing *did* challenge. The DOE shot at the wrong target.

The DOE says that without the March 2020 loan application, it would have argued that Rushing's complaint failed because he had not exhausted administrative

---

[3] Perhaps worse still (from a procedural standpoint), Rushing's response brief cited additional more evidence that he did not submit to the agency as part of his March 2020 loan discharge application. The Court cannot imagine a basis on which it could appropriately consider that evidence in a challenge to the agency's April 2020 decision on that application, not to mention its 2019 decisions on the earlier matters.

remedies. See Def.'s Reply at 3. If so, then perhaps that is the motion the DOE should have filed. But that is not what the agency did. The DOE is not entitled to remake Rushing's complaint into what it thinks the complaint should say and then target that (non-existent) version with a dispositive motion.

The Court concludes that the appropriate course is to deny the DOE's summary judgment motion on the ground that it does not address the claim against the agency that Rushing made in his complaint. At the next status hearing, the Court will discuss with counsel the appropriate next steps. One option that Rushing may wish to consider is a fresh loan discharge application, this time including *all* of his evidence. The agency's regulations do not appear to preclude Rushing from pursuing further administrative remedies—such as filing another application to discharge the loan. See 34 C.F.R. § 685.215(c)(5); see also Carver v. DeVos, No. 3:19 C 00191, 2021 WL 725824 (M.D. Tenn. Feb. 3, 2021) (describing DOE's seventh and eighth denials of the plaintiff's application for loan discharge).

## Conclusion

The Clerk is directed to substitute Acting Secretary of Education Phil Rosenfelt as defendant in place of former Secretary of Education Betsey DeVos. For the foregoing reasons, the Court denies defendant's motion for summary judgment [dkt. no. 85]. The case is set for a telephone status hearing on March 24, 2021 at 9:45 a.m., using call-in number 888-684-8852, access code 746-1053. Counsel should wait for the case to be called before announcing themselves.

Date: March 8, 2021

_____
MATTHEW F. KENNELLY
United States District Judge